UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA                    :

       - v. -                              **INFORMATION**

JOSE ALEJANDRO HURTADO,                      :       **13 CRIM 673**

        Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### COUNT ONE
**(Conspiracy To Violate the Foreign Corrupt Practices Act, To Violate the Travel Act, and To Commit Money Laundering)**

    The United States Attorney charges:

    1.    The Foreign Corrupt Practices Act of 1977, as amended, Title 15, United States Code, Sections 78dd-1, et seq. (the "FCPA"), was enacted by Congress for the purpose of, among other things, making it unlawful for certain classes of persons and entities to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value to a foreign government official for the purpose of assisting in obtaining or retaining business for, or directing business to, any person.

    2.    The Travel Act, Title 18, United States Code, Section 1952, was enacted by Congress for the purpose of, among other things, making it unlawful for persons and businesses to travel in interstate or foreign commerce or use the mail or any facility in interstate commerce to promote, manage, establish, carry on, or facilitate the promotion, management, establishment



or carrying on of certain unlawful activity, including violations of the Foreign Corrupt Practices Act and state anti-bribery laws.

<u>**Relevant Entities and Individuals**</u>

3.    At all times relevant to this Information, the "Broker-Dealer" was a brokerage firm registered with the U.S. Securities and Exchange Commission (the "SEC"), with its principal place of business in New York, New York.  The Broker-Dealer maintained desks at the New York and American Stock Exchanges and had offices in New York, New York, as well as Miami, Florida.  The Broker-Dealer was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(B).

4.    At all times relevant to this Information, JOSE ALEJANDRO HURTADO (hereinafter, "ALEJANDRO HURTADO" or "HURTADO"), the defendant, was an associate or an employee of the Broker-Dealer and was based in Miami, Florida.  HURTADO was a United States citizen and an agent of the Broker-Dealer and therefore was a "domestic concern," and an employee and agent of a "domestic concern," as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(A) and (B).

5.    At all times relevant to this Information, Banco de Desarrollo Económico y Social de Venezuela ("BANDES") was a state-owned and state-controlled economic development bank of the Bolivarian Republic of Venezuela.  It operated under the

- 2 -

direction of the Venezuelan People's Ministry of Planning and Finance.  BANDES acted as the financial agent of the Venezuelan government in order to promote economic and social development, serve as the trustee for agencies of the public sector, and support the expansion and diversification of Venezuela's infrastructure.  BANDES was an "agency" and "instrumentality" of a foreign government, as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2).

6.     At all times relevant to this Information, Maria de los Angeles Gonzalez de Hernandez ("Maria Gonzalez") served as either the Vice President of Finance or the Executive Manager of Finance and Funds Administration of BANDES.  In these capacities, Maria Gonzalez oversaw BANDES's trading abroad, including trading by the Broker-Dealer on behalf of BANDES.  Maria Gonzalez was listed by the Broker-Dealer as an authorized trading contact for BANDES.  Maria Gonzalez was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

**The Bribery Scheme**

7.     From at least in or around early 2009 through in or around 2012, ALEJANDRO HURTADO, the defendant, and others known and unknown, participated in a bribery scheme in which HURTADO and other employees and agents of the Broker-Dealer made bribe payments to Maria Gonzalez in exchange for Maria Gonzalez

- 3 -

steering BANDES business to the Broker-Dealer and authorizing BANDES to execute bond trades with the Broker-Dealer.  During this time period, Maria Gonzalez directed substantial business to the Broker-Dealer on behalf of BANDES and carried out bond transactions that resulted in the Broker-Dealer generating tens of millions of dollars in revenue, of which millions -- representing a portion of the monies generated by the Broker-Dealer's bond trade activity -- were kicked back to Maria Gonzalez.

    8.   In order to carry out and conceal this scheme, ALEJANDRO HURTADO, the defendant, and other co-conspirators caused the Broker-Dealer to route funds from the United States to foreign bank accounts, including accounts held in Switzerland.  A portion of these funds was then further routed to accounts controlled by Maria Gonzalez.

    9.   For his part in the scheme, ALEJANDRO HURTADO, the defendant, introduced Maria Gonzalez to Broker-Dealer personnel who joined the bribery scheme.  Thereafter HURTADO acted as the principal middleman between Maria Gonzalez and the Broker-Dealer. HURTADO directly and indirectly made bribe payments to Maria Gonzalez in exchange for Maria Gonzalez directing BANDES trading business to the Broker-Dealer, and received a share of the commissions paid to the Broker-Dealer by BANDES.

- 4 -

## Statutory Allegation

10.   From at least in or around early 2009 through in or around 2012, in the Southern District of New York and elsewhere, ALEJANDRO HURTADO, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, violations of the FCPA, Title 15, United States Code, Section 78dd-2, violations of the Travel Act, Title 18, United States Code, Section 1952(a)(3)(A), and violations of Title 18, United States Code, Section 1956, an anti-money laundering statute.

## Objects of the Conspiracy

11.   It was a part and object of the conspiracy that ALEJANDRO HURTADO, the defendant, and others known and unknown, being citizens, nationals, and residents of the United States and officers, directors, employees, and agents of a "domestic concern," as that term is defined in the FCPA, and acting on behalf of such "domestic concern," willfully used and caused to be used the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that the money and thing of value would and had been offered, given,

and promised, directly or indirectly, to a foreign official, for purposes of (a) influencing acts and decisions of such foreign official in that foreign official's official capacity, (b) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such foreign official, (c) securing an improper advantage, and (d) inducing such foreign official to use the foreign official's influence with a foreign government and agency and instrumentality thereof to affect and influence acts and decisions of such government and agency and instrumentality, in order to assist HURTADO and others known and unknown in obtaining and retaining business for and with, and directing business to, any person, in violation of Title 15, United States Code, Section 78dd-2(a)(1).

        12.   It was a further part and an object of the conspiracy that ALEJANDRO HURTADO, the defendant, and others known and unknown, willfully and knowingly, would and did travel in interstate and foreign commerce and use the mail and facilities in interstate and foreign commerce, with intent to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, (a) violations of the anti-bribery provisions of the FCPA, Title 15, United States Code, Section 78dd-2, (b) commercial bribery, in violation of New York State Penal Law Section 180.00 and (c) commercial bribe receiving, in

- 6 -

violation of New York State Penal Law Section 180.05; and thereafter would and did perform and attempt to perform acts to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of such unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3)(A).

13.   It was a further part and an object of the conspiracy that ALEJANDRO HURTADO, the defendant, and others known and unknown, would and did transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is, (1) violations of the FCPA, Title 15, United States Code, Section 78dd-2, and (2) violations of the Travel Act, Title 18, United States Code, Section 1952(a)(3)(A), in violation of Title 18, United States Code, Section 1956(a)(2)(A).

## Means and Methods of the Conspiracy

14.   Among the means and methods by which ALEJANDRO HURTADO, the defendant, and others known and unknown, would and did carry out the conspiracy were the following:

a.   Maria Gonzalez directed BANDES trading business to the Broker-Dealer in exchange for HURTADO and others

affiliated with the Broker-Dealer agreeing to pay bribes to Maria Gonzalez from the revenue generated by the Broker-Dealer's trading business with BANDES.

b.   HURTADO and others executed trades of various fixed income instruments for BANDES and generated substantial revenue by charging BANDES mark-ups and/or mark-downs on the market price for the instruments.

c.   HURTADO and others in fact made bribe payments to Maria Gonzalez from the revenue generated by the Broker-Dealer's trading business with BANDES.

d.   In order to carry out their bribery scheme, HURTADO and others caused funds to be sent from the Broker-Dealer in the United States to and through bank accounts outside the United States, with bribe payments ultimately sent to accounts overseas controlled by Maria Gonzalez.

### Overt Acts

15.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about July 13, 2009, ALEJANDRO HURTADO, the defendant, received instructions in an email from Maria Gonzalez directing him to wire certain funds to an account in Switzerland held in the name of an associate of Maria Gonzalez

- 8 -

("Associate 1").

b.    On or about July 21, 2009, acting upon the instructions described above, ALEJANDRO HURTADO, the defendant, wired approximately $509,250 from an account in the United States that had received funds from the Broker-Dealer to a correspondent account maintained in New York, New York, for further transfer to an account in Switzerland held in the name of Associate 1.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Violation of the Foreign Corrupt Practices Act)

The United States Attorney further charges:

16.   The allegations contained in paragraph 1, paragraphs 3 through 9, and paragraphs 14 through 15 are repeated and realleged as if fully set forth herein.

17.   Between on or about July 13, 2009, and on or about July 21, 2009, in the Southern District of New York and elsewhere, ALEJANDRO HURTADO, the defendant, being a citizen, national, and resident of the United States and therefore a "domestic concern," as that term is defined in the FCPA, and an officer, director, employee, and agent of a "domestic concern" acting on behalf of such "domestic concern," willfully used and caused to be used the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the

giving of anything of value to a foreign official, and to a
person, while knowing that the money and thing of value would be
and had been offered, given, and promised, directly or
indirectly, to a foreign official, for purposes of (a)
influencing acts and decisions of such foreign official in that
foreign official's official capacity, (b) inducing such foreign
official to do and omit to do acts in violation of the lawful
duty of such foreign official, (c) securing an improper
advantage, and (d) inducing such foreign official to use the
foreign official's influence with a foreign government and agency
and instrumentality thereof to affect and influence acts and
decisions of such government and agency and instrumentality, in
order to assist HURTADO in obtaining and retaining business for
and with, and directing business to, any person, to wit, HURTADO
caused certain funds to be sent from the Broker-Dealer in New
York, New York to Maria Gonzalez, a Venezuelan foreign official,
in order to obtain and retain trading business directed by the
foreign official on behalf of BANDES, a Venezuelan state-owned
and state-controlled economic development bank, to the Broker-
Dealer.

> (Title 15, United States Code, Section 78dd-2(a)(1), and
> Title 18, United States Code, Section 2.)

## COUNT THREE
## (Violation of the Travel Act)

The United States Attorney further charges:

18.   The allegations contained in paragraphs 2 through 9 and paragraphs 14 through 15 are repeated and realleged as if fully set forth herein.

19.   Between on or about July 13, 2009, and on or about July 21, 2009, in the Southern District of New York and elsewhere, ALEJANDRO HURTADO, the defendant, willfully and knowingly, traveled in interstate and foreign commerce and used the mail and facilities in interstate and foreign commerce, with intent to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, (a) violations of the anti-bribery provisions of the FCPA, Title 15, United States Code, Section 78dd-2, (b) commercial bribery, in violation of New York State Penal Law Section 180.00, and (c) commercial bribe receiving, in violation of New York State Penal Law Section 180.05; and thereafter performed and attempted to perform acts to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of such unlawful activity, to wit, HURTADO, acting as an intermediary, caused certain funds to be sent from the Broker-Dealer in New York, New York, to a Venezuelan foreign official, in order to obtain and retain trading business directed by the

- 11 -

foreign official on behalf of BANDES, a Venezuelan state-owned and state-controlled economic development bank, to the Broker-Dealer.

(Title 18, United States Code, Sections 1952 and 2.)

## COUNT FOUR
### (Money Laundering)

The United States Attorney further charges:

20.    The allegations contained in paragraphs 3 through 9 and paragraphs 14 through 15 are repeated and realleged as if fully set forth herein.

21.    Between in or about July 13, 2009, and July 21, 2009, in the Southern District of New York and elsewhere, ALEJANDRO HURTADO, the defendant, willfully and knowingly transported, transmitted, and transferred, and attempted to transport, transmit, and transfer, monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is, (1) violations of the FCPA, Title 15, United States Code, Section 78dd-2, and (2) violations of the Travel Act, Title 18, United States Code, Section 1952(a)(3)(A); to wit, HURTADO, acting as an intermediary, caused certain funds to be sent from the Broker-Dealer in New York, New York, to an account in Switzerland controlled by a Venezuelan foreign official, to carry out a

- 12 -

bribery scheme.

(Title 18, United States Code, Sections 1956(a)(2)(A) and 2.)

## COUNT FIVE
### (Conspiracy To Obstruct Justice)

The United States Attorney further charges:

22.   The allegations contained in paragraphs 3 through 9 and paragraphs 14 through 15 are repeated and realleged as if fully set forth herein.

### The Scheme To Obstruct Justice

23.   In November 2010, the SEC commenced a periodic examination of the Broker-Dealer.  From November 2010 through March 2011, the SEC's examination staff made several visits to the Broker-Dealer's offices in New York, New York, to conduct the examination.

24.   In or about early 2011, after the SEC examination was underway, ALEJANDRO HURTADO, the defendant, discussed with others involved in the scheme that the SEC was examining the Broker-Dealer's relationship with BANDES and asking questions regarding certain emails and other information the SEC examination staff had discovered.  HURTADO and others discussed and agreed that they would take steps to conceal the true facts of the Broker-Dealer's relationship with BANDES, including deleting emails.

## Statutory Allegation

25.   In or around early 2011, in the Southern District of New York and elsewhere, ALEJANDRO HURTADO, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, to obstruct justice.

26.   It was a part and an object of said conspiracy that ALEJANDRO HURTADO, the defendant, and others known and unknown, willfully, knowingly, and corruptly would and did influence, obstruct, and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before a department and agency of the United States, to wit, an examination by the SEC, in violation of Title 18, United States Code, Section 1505.

## Overt Act

27.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a.   In or around early 2011, after discussing with his co-conspirators the imperative of deleting incriminating emails that the SEC examination staff might discover, ALEJANDRO HURTADO, the defendant, deleted emails relating to the scheme to bribe Maria Gonzalez to obtain business for the Broker-Dealer.

(Title 18, United States Code, Section 371.)

## COUNT SIX
### (Conspiracy To Violate the Foreign Corrupt Practices Act)

The United States Attorney further charges:

28.   The allegations contained in paragraph 1 and paragraphs 3 through 4 are repeated and realleged as if fully set forth herein.

29.   At all times relevant to this Information, Banfoandes Bank, including its 2009 successor, Banco Bicentenario (collectively, "Banfoandes"), was a state-owned and state-controlled economic development bank of the Bolivarian Republic of Venezuela.  It operated under the direction of the Venezuelan People's Ministry of Planning and Finance.  Banfoandes acted as a financial agent of the Venezuelan government in order to promote economic and social development by, among other things, offering credit to low-income Venezuelans.  Banfoandes was an "agency" and "instrumentality" of a foreign government, as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2).

30.   At all times relevant to this Information, an individual, hereinafter referred to as the "Banfoandes Foreign Official," served as a vice president of Banfoandes who, among other things, was responsible for some of Banfoandes's foreign investments.  The Banfoandes Foreign Official was listed by the Broker-Dealer as an authorized trading contact for Banfoandes.

- 15 -

The Banfoandes Foreign Official was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

31.    From in or around 2008 through in or around mid-2009, in the Southern District of New York and elsewhere, ALEJANDRO HURTADO, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, violation of the FCPA, Title 15, United States Code, Section 78dd-2.

## Object of the Conspiracy

32.    It was a part and object of the conspiracy that ALEJANDRO HURTADO, the defendant, and others known and unknown, being citizens, nationals, and residents of the United States and officers, directors, employees, and agents of a "domestic concern," as that term is defined in the FCPA, and acting on behalf of such "domestic concern," willfully used and caused to be used the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that the money and thing of value would be and had been offered, given, and promised, directly or indirectly, to a foreign

official, and to a person, for purposes of (a) influencing acts and decisions of such foreign official in that foreign official's official capacity, (b) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such foreign official, (c) securing an improper advantage, and (d) inducing such foreign official to use the foreign official's influence with a foreign government and agency and instrumentality thereof to affect and influence acts and decisions of such government and agency and instrumentality, in order to assist HURTADO and others known and unknown in obtaining and retaining business for and with, and directing business to, any person, in violation of Title 15, United States Code, Section 78dd-2(a)(1).

## Overt Act

33.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a.   On or about February 10, 2009, another member of the conspiracy emailed ALEJANDRO HURTADO, the defendant, a spreadsheet containing information concerning Banfoandes trades executed by the Broker-Dealer and related commissions, including payments to be made to the Banfoandes Foreign Official.

(Title 18, United States Code, Section 371.)

- 17 -

## FORFEITURE ALLEGATION WITH RESPECT
## TO COUNTS ONE THROUGH THREE AND COUNT SIX

34.  As the result of committing one or more of the offenses charged in Counts One through Three and Count Six of this Information, ALEJANDRO HURTADO, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of those offenses, and all property traceable to such property.

## FORFEITURE ALLEGATION WITH RESPECT TO COUNTS ONE AND FOUR

35.  As the result of committing one or more of the offenses charged in Counts One and Four of this Information, ALEJANDRO HURTADO, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal, involved in such offenses, and all property traceable to such property.

## Substitute Asset Provision

36.  If any of the above-described forfeitable property in Paragraphs 34 and 35, as a result of any act or omission of the defendant,

> a.   cannot be located upon the exercise of due diligence;
>
> b.   has been transferred or sold to, or deposited with, a third person;

- 18 -

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

    (Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461.)


_____
PREET BHARARA
United States Attorney


_____
JEFFREY H. KNOX
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

- 19 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

JOSE ALEJANDRO HURTADO,

Defendant.

## INFORMATION

13 Cr.

(Title 15, United States Code, Section
78dd-2; Title 18, United States Code,
Sections 2, 371, 1952, and 1956.)

PREET BHARARA
United States Attorney.

JEFFREY H. KNOX
Chief, Fraud Section, Criminal Division,
Department of Justice.

8/30/13 - Filed Information
DC       Filed Waiver of Indictment
                    Judge Frances.
                    USMJ.